UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-mj-8124-BER

UNITED STATES OF AMERICA

v.

JUSTIN BRANDON BERNS,

                   **Defendant.**          /

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Mills Maynard)?  ☐ Yes  ☑ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

3. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ☐ Yes  ☑ No

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  ☐ Yes  ☑ No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

BY: _/s/ Aurora Fagan_____
AURORA FAGAN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.   0188591
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:   (561) 820-8711
Fax:   (561) 820-8777
Email:   Aurora.Fagan@usdoj.gov

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 25-mj-8124-BER |
| JUSTIN BRANDON BERNS, | ) |
|  | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 2017 through May 2024__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1343 | Wire Fraud. |

FILED BY____TM____D.C.

Mar 7, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*William Johnson*
Complainant's signature

Special Agent Wiliam Johnson, FBI
*Printed name and title*

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date: March 7, 2025

*Bruce Reinhart*
Judge's signature

City and state: West Palm Beach, FL    Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

I, William Johnson, depose and say under penalty of perjury:

**Agent's Background**

1. I am a special agent with the Federal Bureau of Investigation ("FBI") and have been since February of 2010. I attended FBI Academy in Quantico, Virginia and received training in conducting investigations into violations of federal laws. Since July of 2010 I have been assigned to a squad that investigates financial crimes. I have conducted numerous investigations including wire fraud, financial institution fraud, securities fraud, extortion, and Ponzi schemes.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information I obtained from various law enforcement agents and others. This affidavit does not contain every fact known about this investigation but rather includes facts sufficient to establish probable cause that JUSTIN BERNS engaged in a scheme to defraud, and thereby committed Wire Fraud in violation of Title 18 United States Code §1343.

**Investigation Background**

4. JUSTIN BERNS (JUSTIN), a resident of California, has been engaging in a wire fraud scheme and defrauding victim R.P. of over $7 million over a seven-year period, from in or around April 2017 through in or around May 2024. R.P. is a resident of Palm Beach County, Florida. R.P. has been friends with JUSTIN'S father ("J's father") since 1987. In or around April 2017, J's father informed R.P. that his son, JUSTIN, was suffering a substantial financial hardship. J's father told R.P. that he was attempting to help JUSTIN pay off his significant debt, however J's father had run out of his own personal funds in his efforts. R.P. has known JUSTIN since JUSTIN was a child, and last saw him in person approximately ten years ago. JUSTIN lives in Los Angeles, California.

5. JUSTIN told R.P. that due to his extensive debts, history of overdrafts, and writing bounced checks, the money that J's father attempted to send to JUSTIN was tied up and frozen by the banks. JUSTIN went on to tell R.P. that he needed R.P.'s money to unfreeze J's father's money. JUSTIN explained to R.P. that once he was able to pay off a certain amount of JUSTIN's debt, the money R.P. and J's father sent to JUSTIN would be unfrozen. Once the money was unfrozen, JUSTIN would pay both J's father and R.P. their money back. R.P. agreed to lend JUSTIN the money, believing he was helping his longtime friend, J's father, and his son, JUSTIN.

6. R.P. began wiring money per JUSTIN's instructions. Each time R.P. wired money, JUSTIN would tell him he needed more money, and would provide R.P. with various excuses as to why the money already sent was not successful in unfreezing the funds. On some occasions, JUSTIN would tell R.P. that his money was received but reversed by the bank weeks later due to his blacklisted status with various banks and credit unions. JUSTIN told R.P. that the banks collaborate with one another, and therefore several banks know of his poor financial history. JUSTIN explained that banks use Early Warning Services and Chexsystems as a weapon against consumers attempting to utilize the banks services. Over the course of approximately seven years, R.P. provided JUSTIN over $7 million.

7. During these seven years, JUSTIN sent R.P. screen shots from various accounts showing accumulated funds sent by R.P. and J's father sitting in a frozen account. JUSTIN told R.P. that the funds could not be accessed until payment was received by one collection agency or another. JUSTIN would send R.P. statements and correspondence from collection agencies who he claimed was working on behalf of the banks. JUSTIN communicated with R.P. via email and

text messages, and would forward correspondence that JUSTIN claimed to be from banks and debt collection agencies.

8.  JUSTIN told R.P. that he was blacklisted by several financial institutions, and therefore he was unable to send and receive money through traditional banking methods. JUSTIN also claimed that the debt collection agency Transworld Systems, Inc. (TSI) is owned by the banks.

9.  Over five years ago, around 2018, JUSTIN told R.P. that he hired a California based attorney named "Stephen Hernandez" ("Hernandez") to help represent him against various financial institutions and collection agencies. Soon after, Hernandez began emailing R.P. on JUSTIN's behalf, explaining JUSTIN's financial situation to R.P. on a regular basis. According to R.P., Hernandez's emails to R.P. legitimized JUSTIN's situation. Hernandez would forward emails from various banks, as well as copy and paste messages from collection agencies to R.P. Hernandez utilized a separate Gmail email address in Hernandez's name to communicate with R.P.  In July of 2020, R.P. received a promissory note from JUSTIN, in the amount of $3.9 million. According to JUSTIN, this note was drafted by Hernandez.

10.  R.P. has called Hernandez at a telephone number provided by JUSTIN, but has never had anyone answer the call.  R.P. has never spoken to Hernandez, nor has he ever met Hernandez in person. R.P. attempted to independently verify Hernandez's identity and was unable to do so.  R.P. also had a California based attorney attempt to verify whether Hernandez was an attorney, but that attorney also could not find Hernandez.

11.  Throughout the investigation the FBI has attempted to verify Hernandez's existence and status as a California attorney. The California State Bar confirmed that there is no

record of a person named Stephen Hernandez ever being licensed to practice law in California since the Bar's establishment in 1927.

12. The FBI also analyzed subscriber and IP login records for the gmail email address used by Hernandez in communicating with R.P. The account was created in 2018, around the same time that JUSTIN introduced Hernandez as his attorney. IP connection logs for the Hernandez email account also overlap with the connection logs for JUSTIN's personal email address. The content of the Hernandez email account only pertain to communications with R.P. and not to any other clients. Therefore, there is reason to believe the Hernandez persona is fictitious and created by JUSTIN to further his fraud scheme.

13. On or about March 28th, 2024, JUSTIN sent R.P. a letter dated March 28, 2024, purportedly from TD Bank to JUSTIN. The letter appears to be on TD Bank letterhead and states that because JUSTIN owed TSI an outstanding balance, TD Bank had frozen JUSTIN's funds. The letter further stated that upon JUSTIN resolving his debt with TSI, TD Bank will "release the previously cut checks to you. These will be available at a branch location within 3-5 business days. Our records reflect that, at your request, the checks are currently payable as follows:" The letter then indicates that three checks will be released to R.P. (made payable to his company) in the amounts of "$6.139M", "$86,381.23", and "$208,332.19". According to R.P., this letter lent validity to JUSTIN's claims that the monies provided by R.P. were "tied up" or "frozen" and that additional funds were needed to "unfreeze" the large pot of money.

14. The FBI confirmed with TD Bank that as of March 2024, JUSTIN's TD Bank accounts were, in fact, closed. The FBI also confirmed that the letter was not issued by TD Bank and was, therefore, counterfeit. Records from TD Bank also show that JUSTIN did not, in fact, have a balance of over $6 million in March of 2024.

15.     A review of R.P.'s bank records for the time period of May 2018 to May 2024, show that over $7 million was sent via wire transfers from various financial accounts controlled by R.P. to bank accounts owned by JUSTIN, which includes JUSTIN's TD Bank account.

16.     A review of JUSTIN's TD Bank account for the time period of August 2018 to March 2024 shows incoming wire transfers from R.P.'s bank account. JUSTIN is the sole signatory and owner of this account.  The vast majority of the funds deposited into JUSTIN's account came from R.P.  JUSTIN does not appear to have any other course of income, despite Justin and his father telling R.P. that JUSTIN worked in the entertainment industry in California. JUSTIN told R.P. that he would use the wired money to resolve his financial issues with various banks and debt collection agencies. He assured R.P. that once these issues were resolved and his frozen funds were released, he would repay both R.P. and J's father, however, to date, R.P. has not been repaid. The FBI analyzed JUSTIN's TD Bank, Wells Fargo, USC Credit Union, and SunTrust bank accounts and found no evidence of disbursements to any collection agencies. Furthermore, an analysis of bank records received to date revealed that JUSTIN used the funds received from R.P. on international travel, luxury hotels, nightclubs, gambling, and personal living expenses.

17.     JUSTIN also emailed to R.P. 21 letters dated April 2, 2014 to May 14, 2024 that were purportedly from TSI to JUSTIN regarding JUSTIN's outstanding debt.  TSI reported to the FBI that they have no record of these letters, nor do they have any records of any accounts related to JUSTIN.  Specifically, TSI stated that the letters "do not correspond to any records in TSI's possession and do not appear to have been sent by TSI. Specifically, while all letters [sent to TSI to verify] purport to be sent from a TSI office at 507 Prudential Road, Horsham, PA 19044, TSI has not had any office at that location in over eight years. Further, while these letters were

5

purportedly sent by collections agents "R. Saguaro" and "A.L. Maxwell," TSI did not have any employees with those initials at the time of these letters."

Therefore, it appears that these letters were also fraudulently created by JUSTIN and sent to R.P. in an effort to further his fraud scheme and extract additional money from R.P.

18. Based on the foregoing, I respectfully submit that from in or around April 2017, and continuing through at least in or around May 2024, JUSTIN BERNS committed violations of 18 U.S.C S 1343 (wire fraud).

FURTHER YOUR AFFIANT SAYETH NAUGHT

*William Johnson*
_____
William Johnson
Special Agent
Federal Bureau of Investigation

Sworn and Attested to me by Applicant by
Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d)
on this __7__ day of March 2025.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE